1    Jesse L. Miller (SBN 183229)
     Email: jessemiller@reedsmith.com
2    REED SMITH LLP
     101 Second Street, Suite 1800
3    San Francisco, CA 94105-3659
     Telephone:   +1 415 543 8700
4    Facsimile:   +1 415 391 8269

5    Donald A. Cespedes (SBN 321650)
     Email: dcespedes@reedsmith.com
6    REED SMITH LLP
     1510 Page Mill Road Suite 110
7    Palo Alto, CA 94304
     Telephone:   +1 650 352 0500
8    Facsimile:   +1 650 352 0699

9    Attorneys for Defendant and Counter-
     Claimant Newfront Insurance, Inc.
10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13

14   ACRISURE, LLC                          Civil Action No.: 3:19-cv-08150 KAW

15                    Plaintiff,            **DEFENDANT NEWFRONT INSURANCE,
                                            INC.'S NOTICE OF MOTION AND
16   vs.                                    MOTION FOR RULE 11 SANCTIONS;
                                            MEMORANDUM OF POINTS AND
17   NEWFRONT INSURANCE, INC.,              AUTHORITIES IN SUPPORT THEREOF**

18                    Defendant.            Hearing Date: May 7, 2020
                                            Time: 10:00 am
19                                          Place: Courtroom TBD
                                            Hon. Vince G. Chhabria
20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................................... 4

    A.    Background Between Acrisure and Newfront ................................................ 4

    B.    Trademark Infringement Claim ..................................................................... 5

III.  ARGUMENT .............................................................................................................. 7

    A.    Rule 11 Legal Standard ................................................................................. 7

    B.    Under the *Sleekcraft* Factors, Acrisure's Lanham Act Claims Against
        Newfront are Legally and Factually Baseless ............................................... 8

        (i)     The Strength of Acrisure's Mark ...................................................... 9

        (ii)    The Similarity of the Marks ............................................................ 10

        (iii)   The Relatedness of the Goods ......................................................... 11

        (iv)    Evidence of Actual Confusion ......................................................... 11

        (v)     The Marketing Channels Used ......................................................... 11

        (vi)    The Type of Goods and the Degree of Care Likely to be Exercised
             by the Purchaser .............................................................................. 12

        (vii)   Newfront's Intent in Selecting the Mark ......................................... 12

        (viii)  The Likelihood of Expansion of the Product Lines ........................ 13

    C.    Because Acrisure's Trademark Claims Are Frivolous, Acrisure's Other Claims
        Are Also Frivolous ....................................................................................... 13

    D.    Acrisure Failed to Conduct a Reasonable Inquiry into Its Claims
        Against Newfront .......................................................................................... 14

IV.   CONCLUSION ......................................................................................................... 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ............................................................................... *passim*

*Amstar Corp. v. Domino's Pizza, Inc.*,
    615 F.2d 252 (5th Cir.), cert. denied, 449 U.S. 899 (1980) ....................................11

*Brookfield Comms., Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ...................................................................7, 10, 13

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*,
    892 F.2d 802 (9th Cir. 1989), aff'd, 498 U.S. 533 (1991) ........................................7

*Buster v. Greisen*,
    104 F.3d 1186 (9th Cir. 1997) ..................................................................................8

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ..................................................................................7

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ..................................................................................14

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) .................................................................................................7

*Copple v. Astella & Rice, P.C.*,
    No. C 05-03961 JSW, 2006 WL 2331005 (N.D. Cal. Aug. 9, 2006) ...........................8

*Eclipse Assoc., Ltd. v. Data General Corp.*,
    894 F.2d 1114 (9th Cir. 1990) ..................................................................................9

*Estate of Blue v. County of Los Angeles*,
    120 F.3d 982 (9th Cir. 1997) ...............................................................................8, 15

*Estate of P. D. Beckwith, Inc. v. Comm'r of Patents*,
    252 U.S. 538, 40 S. Ct. 414, 64 L. Ed. 705, 1920 Dec. Comm'r Pat. 471 (1920) .......10

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ...........................................................................10, 13

*Holgate v. Baldwin*,
    425 F.3d 671 (9th Cir. 2005) ..................................................................................14

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*,
   2007 WL 6137003 (C.D. Cal. 2007)..................................................................8

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation*,
   11 F.3d 1460 (9th Cir. 1993) ............................................................................15

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
   828 F.3d 1098 (9th Cir. 2016) ............................................................................9

*Kendrick v. Zanides*,
   609 F. Supp. 1162 (N.D. Cal. 1985) ...............................................................8, 14

*Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*,
   856 F.2d 1445 (9th Cir. 1988) .........................................................................9, 10

*New West Corp. v. NYM Co. of California, Inc.*,
   595 F.2d 1194 (9th Cir. 1979) ..........................................................................14

*Norm Thompson Outfitters, Inc. v. General Motors Corp.*,
   448 F.2d 1293 (9th Cir. 1971) ..........................................................................10

*Northland Ins. Cos. v. Blaylock*,
   115 F. Supp. 2d 1108 (D. Minn. 2000).............................................................12

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
   809 F.2d 601 (9th Cir. 1987) ............................................................................11

*Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee
   en 1772*, 396 F.3d 1369 (Fed. Cir. 2005).........................................................9

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
   786 F. App'x 662 (9th Cir. 2019) ......................................................................8

*Strom v. United States*,
   641 F.3d 1051 (9th Cir. 2010) ..........................................................................7

**Statutes**

15 U.S.C. § 1072..................................................................................................15

**Rules**

Fed. R. Civ. P. 11 .......................................................................................1, 7, 14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

<u>**NOTICE OF MOTION AND MOTION FOR SANCTIONS**</u>

NOTICE IS HEREBY GIVEN that on May 7, 2020, at 10:00 am in a Courtroom to be determined by this Court, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Newfront Insurance, Inc. ("Newfront"), through its undersigned counsel, will and hereby does move the Court for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") against Plaintiff Acrisure, LLC ("Acrisure").

<u>**RELIEF SOUGHT**</u>

Pursuant to Rule 11, Newfront requests sanctions in the form of a dismissal with prejudice of each of Acrisure's claims, an order directing Acrisure to pay Newfront's attorneys' fees and costs for bringing this Motion and defending against Acrisure's frivolous claims, and any additional sanctions the Court determines to be just.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   <u>INTRODUCTION</u>**

This trademark action is a sham. A simple comparison of the marks demonstrates that fact.




Not only is Acrisure's case factually and legally frivolous with respect to the trademark claims, it was also filed for an improper purpose. This action is but Acrisure's latest attempt–and perhaps its most improper one–to retaliate against a competitor, Newfront. Why is Acrisure doing this? Because Newfront has successfully–and legally–recruited multiple Acrisure employees–seven in fact. While Acrisure's desire to stop the bleeding is understandable, that does not make its methods acceptable. Acrisure threats and retention gambits have not worked, and nor should this Court countenance strategic litigation filed for an improper purpose.

Context matters. Newfront and Acrisure are insurance brokerage firms. Brokerage firms employ licensed insurance brokers who find and build relationships with purchasers of insurance, learn about these clients' unique business needs, and secure insurance policies on the clients' behalf that meet those needs. The firm derives income from commissions paid on the policies the brokers obtain

for their clients. The relationship between client and broker is unique and personal, and insurance purchasers are considered in the brokerage industry to be the client of the broker, not the brokerage firm, and the clients are referred to as the broker's "book of business." Accordingly, clients ordinarily maintain their relationship with an individual broker when the broker moves to a new brokerage firm. These moves are common in the brokerage industry, and, since brokerages cannot prevent clients from moving, firms often work cooperatively to transfer accounts along with the broker.

Over the last twelve months, Newfront successfully hired more than seven former Acrisure employees/brokers. Unlike other firms in the brokerage industry that work cooperatively to transfer accounts along with the broker, in response to each of these hires by Newfront, Acrisure sent threatening letters to the former employees asserting frivolous claims. *See* Miller Decl., Exs. B-1-B-12 (attaching previous correspondence between Newfront and Acrisure relating to Newfront's hiring of Acrisure's employees). Acrisure's favored threats revolved around allegations claiming breaches of non-solicitation clauses and the misappropriation of confidential information. Newfront cites the Court to these letters not to prove who was right or wrong, but to demonstrate that the genesis of this litigation has nothing to do with trademark law.

Now, Acrisure has gone too far, opting to attack Newfront directly in court by filing frivolous and bad faith trademark and unfair competition claims, claims that the most cursory inquiry would have revealed to be both false and meritless. This is a waste of the parties' and the Court's resources and time and should result in sanctions against both Acrisure and its counsel. Newfront has been using the design about which Acrisure claims infringement for over 2 years. *See* Lotan Decl., Ex. C at ¶3. However, it was only after the series of letters and disputes described above, that Acrisure decided to bring this claim. If they were actually suffering harm why not do so earlier? The answer is obvious. This is strategic litigation and it is improper under Rule 11.

With that background, we turn to the marks themselves. Acrisure's claim is simple: Newfront uses a design mark confusingly similar to Acrisure's mark. However, a basic visual comparison reveals the marks are not similar, and Acrisure's claims are frivolous. These are the logos currently being used on Newfront's and Acrisure's respective websites:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

 [1]    [2]

Acrisure acknowledges the Acrisure Design Mark is used in "***conjunction with and/or adjacent to the office's own name or trademarks***." ECF 1 at p. 4:8. What Acrisure fails to acknowledge is that the Newfront Design Mark is used in conjunction with the "Newfront Insurance" word mark. *See* Lotan Decl., Ex. C at ¶¶4-5. How can there possibly be confusion between the design marks when each company has included its name in the overall design? Moreover, the images above demonstrate sharp contrasts. Notably, the two design marks are of a different design (the Acrisure Design Mark is defined as 15 squares of varying sizes all with rounded corners, which is in contrast to the Newfront Design Mark which consists of 24 squares of the same size without rounded corners), in addition to the different alignments of the marks. Nonetheless, even if the design marks were somehow confusing to a consumer (which they are not), any confusion is unrealistic because, as shown above and acknowledged in the complaint, ***both Acrisure's and Newfront's logos are used alongside the companies trade names/word marks***, which operate as the source indicator and mitigate any possibility of confusion.

Furthermore, as discussed *infra*, a number of third parties also use the same or similar design as Acrisure's logo in connection with identical or highly related services (insurance and insurance brokerage services). Thus, the Acrisure Design Mark already coexists in a crowded field of similar designs/logos for related services, and is therefore a weak mark.

All of these factors demonstrate that Acrisure's claims are without any legal or factual basis. These facts were also readily available and thus should have been readily apparent to Acrisure and its counsel upon even the most superficial of investigations. Yet, it is clear that no reasonable inquiry was performed. This failure to perform a reasonable inquiry and the assertion of these frivolous claims clearly violate Rule 11 and warrant sanctions. Furthermore, Acrisure's decision to pursue this action

---

[1] *See* Newfront design mark, referred to as "Newfront Design Mark," Cespedes Decl., Ex. A-1.

[2] *See* Acrisure design mark, referred to as "Acrisure Design Mark," Cespedes Decl., Ex. A-2.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  only after a twelve-month letter writing campaign of threats and recriminations is an independent basis

2  for sanctions because it reveals the improper purpose.[3]

3  **II.   STATEMENT OF FACTS**

4      **A.   Background Between Acrisure and Newfront**

5        It is important to note the background between Acrisure and Newfront.  This context illustrates

6  that Acrisure has brought its frivolous claims in bad-faith, and not with an actual and good-faith belief

7  of infringement. *See* Miller Decl., Exs. B-1-B-12.  As discussed above, over a twelve month period,

8  Newfront hired several former Acrisure employees, including Adrianne Peixotto, Rick Monetta, Roni

9  Sprizzo, Peter Johnson, and Steve DeCristofaro.  A dispute between competitors over employee

10 mobility ensued, the merits of which are not in play here – but there was indeed a quarrel.  The point

11 being that context informs the basis for this Rule 11 Motion.  Some background is instructive.

12       In late February of 2019, Ms. Peixotto left her employment with Acrisure. Soon thereafter, on

13 March 11, 2019, after Ms. Peixotto began her employment with Newfront, she received her first

14 threatening letter from Acrisure's counsel, this initial one claiming that Ms. Peixotto was in breach of

15 the non-solicitation clauses in her employment contract. *See* Miller Decl., Ex. B-1.  On March 15,

16 2019, counsel for Ms. Peixotto wrote in response to the March 11 letter demonstrating that the non-

17 solicitation clause was unenforceable. *See* Miller Decl., Ex. B-3. Ms. Peixotto and Newfront received

18 no response.

19       Months passed. In the interim, Newfront hired Mr. Monetta after he left his employment with

20 Acrisure. *See* Miller Decl., Ex. B-2. Soon thereafter, Acrisure wrote a threatening letter claiming that

21 Mr. Monetta improperly moved Acrisure clients to another broker. *Id.* Newfront responded, and

22 Acrisure went away. *See* Miller Decl., Ex. B-4. Then, Newfront hired Mr. Sprizzo after he terminated

23 his position with Acrisure. Acrisure wrote a threatening letter to Mr. Sprizzo claiming he stole

24 confidential information. *See* Miller Decl., Ex. B-5.  Again, Newfront responded and Acrisure went

25

26 [3] What's more, the same attorney (and the same law firm) that prepared and filed this trademark action was behind a series of threatening letters sent to Newfront in December 2019 regarding a departed

27 employee.  *See* Miller Decl., Ex. B-11. Worse still, the very same Acrisure attorney sent an accusatory, holiday missive to Newfront on December 23, 2019, only a few days after serving this lawsuit on

28 Newfront!  *See id.*  Clearly, the law firm was the architect of this improper strategy.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

away. *See* Miller Decl., Exs. B-6, B-7. Subsequently, Acrisure hired Peter Johnson after he terminated his position with Acrisure. And then, more than three months after Ms. Peixotto terminated her position with Acrisure, Acrisure sent its second threatening letter to her claiming that Acrisure recently discovered that she had taken confidential information. *See* Miller Decl., Ex. B-8.

Thereafter, Mr. DeCristofaro left his employment with Acrisure to join Newfront. On December 11, 2019, Acrisure's counsel threatened both Newfront and Mr. DeCristofaro, and accused him of violating his employment agreement by using confidential information. *See* Miller Decl., Exs. B-9, B-11. Again, Newfront responded in writing.  *See* Miller Decl., Exs. B-10, B-12. But this time, Acrisure decided to up the ante and it filed this action.

On December 17, 2019, Acrisure served Newfront with the Complaint.  A few short days later, on December 23, 2019, Acrisure's counsel launched more threats at Newfront and Mr. DeCristofaro. *See* Miller, Decl. Ex. B-11. On December 27, 2019, Newfront responded. *See* Miller Decl., Ex. B-12. Tellingly, Acrisure was not heard from again on these matters – other than the trademark lawsuit. Now, Acrisure insists on pursuing this action despite being warned that it was filed for an improper purpose and to chill valid competition.

It is obvious that the genesis of this trademark infringement claim litigation was Acrisure's displeasure that some of its employees quit and opted to join Newfront. After Acrisure's baseless letters failed to stem the tide of departures, Acrisure pursued a new gambit—this frivolous trademark case.  *See supra,* FN 3.  Moreover, they did so without any prior notice. *See* Lotan Decl., Ex. C at ¶6.

**B.    Trademark Infringement Claim**

Acrisure alleges in its complaint that Newfront's use of the Newfront Design Mark is confusingly similar to the Acrisure Design Mark. Yet, as noted above, Acrisure's "offices advertise using the Acrisure Design Mark ***in conjunction with and/or adjacent to the office's own name or trademarks***." *Id.* at 4:7-14 (emphasis added); *see also* Acrisure Design Mark, Cespedes Decl., Ex. A-2. This is in addition to the fact that Newfront also uses the Newfront Design Mark in conjunction with the NEWFRONT word mark. *See* Newfront Design Mark, Cespedes Decl., Ex. A-1; Lotan Decl., Ex. C at ¶¶4-5.

Nevertheless, in an effort to support this allegation, Acrisure asserts that at "least as early as

1  2011, Acrisure has used the Acrisure Design Mark." *See* ECF 1 at 4:25. However, there are a number

2  of third-party uses of similar logos/designs for insurance related services that have existed both prior

3  and subsequent to Acrisure's use of the Acrisure Design Mark. Examples of use-based trademark

4  registrations and applications for third parties currently using the same or similar designs in connection

5  with highly related goods or services include:

| Mark/Design | Reg. No. | Owner | Application Date | Registration Date | Date of First Use in Commerce |
|---|---|---|---|---|---|
|  | 2,328,540 | MONETA GROUP 2005, LLC | 04-NOV-1998 | 14-MAR-2000 | 1986 |
|  | 5,405,857 | PURITAN LIFE INSURANCE COMPANY OF AMERICA | 27-JUN-2017 | 20-FEB-2018 | 26-APR-2017 |
|  | 3,197,408 | COMMONWEALTH EQUITY SERVICE, INC. | 20-OCT-2004 | 09-JAN-2007 | 31-OCT-2004 |
|  | 2,943,918 | CORNERSTONE SENIOR SERVICES, LLC | 09-APR-2004 | 26-APR-2005 | 19-FEB-2004 |
|  | 3,208,567 | VENTIS CONSULTING, LLC | 11-APR-2006 | 13-FEB-2007 | 01-APR-2005 |
|  | 5,137,182 | SUNZ HOLDINGS, LLC | 24-JUN-2016 | 07-FEB-2017 | 01-JUN-2016 |
|  | 3,013,697 | ARMADACORP CAPITAL, LLC | 26-APR-2004 | 08-NOV-2005 | 01-JAN-2004 |
|  | 2,593,715 | ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED | 26-JUN-2000 | 16-JUL-2002 | 29-JUL-1999 |
|  | 4,620,832 | ROBERT K. STRAUSS | 18-MAR-2014 | 14-OCT-2014 | 31-DEC-2012 |
|  | 88-400,851 (App. No.) | ACCELEVANT HOLDINGS, LLC | 24-APR-2019 | Pending | 18-APR-2019 |
|  | 88-412,822 (App. No.) | ACCELEVANT HOLDINGS, LLC | 02-MAY-2019 | Pending | 18-APR-2019 |

*See* Use-Based Federal Registrations and Evidence of Use of Same or Similar Third-Party Design

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Marks (the "Federal Registrations"), Cespedes Decl., Ex. A-3. Despite the aforementioned similar third-party design marks (many of which include shaded squares arranged in rows to form a triangular shape), Acrisure still contends that Newfront is infringing upon the Acrisure Design Mark because both marks include "a number of shaded squares arranged in rows to form a triangular shape." ECF 1 at 5:26-28. The Acrisure Design Mark, however, "consists of a triangle made up of *15 squares of varying sizes all with rounded corners*."  ECF 1 at Exhibit A (emphasis added).  On the other hand, the Newfront Design Mark consists of *24 squares of the same size without rounded corners* and pointed in a completely different direction. *See* Newfront Design Mark, Cespedes Decl., Ex. A-1.

Based upon the above, on February 28, 2020, Newfront served a copy of this Motion on Acrisure pursuant to Federal Rule of Civil Procedure 11(c)(2), and requested for Acrisure to voluntarily dismiss its claims against Newfront. Acrisure, however, declined to voluntarily dismiss its claims. Accordingly, 21 days after service of the Motion on counsel for Acrisure, Newfront filed this Motion.

## III.   ARGUMENT

### A.   Rule 11 Legal Standard

Under Rule 11, when presenting a pleading, written motion, or other paper to the court, an attorney must have conducted "an inquiry reasonable under the circumstances" to ensure that "factual contentions have evidentiary support." FED. R. CIV. P. 11(b)(3). This ensures that attorneys conduct a reasonable inquiry to confirm that every claim has some merit before filing.  *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2010) (citing *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 405 (1990)). Rule 11 imposes this affirmative duty of investigation as to both law and fact to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers. *Christian v. Mattel*, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002). Three kinds of submissions are sanctionable under Rule 11: 1) papers that are factually frivolous; 2) papers that are legally frivolous; and 3) papers that have been filed for an improper purpose. FED. R. CIV. P. 11; *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 892 F.2d 802, 808 (9th Cir. 1989), aff'd, 498 U.S. 533 (1991).

Where the complaint is the primary focus of a Rule 11 proceeding, as here, to determine if a pleading is "frivolous" a court will consider whether (1) the complaint is legally or factually "baseless"

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

from an objective perspective, and (2) if the attorney has conducted "a reasonable and competent inquiry" before signing and filing it. *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997). "A claim is legally baseless if it is legally unreasonable, while a claim is factually baseless if its lacks factual foundation." *See ICU Medical, Inc. v. Alaris Medical Systems, Inc.,* 2007 WL 6137003, at *3 (C.D. Cal. 2007) (citing *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997)). Additionally, a "reasonable inquiry" requires counsel to seek sufficient credible information—as opposed to opinions, suspicions, or mere conclusions—that enable the party to form a belief that the allegations in the complaint are well grounded in fact. *Copple v. Astella & Rice, P.C.*, No. C 05-03961 JSW, 2006 WL 2331005, at *2 (N.D. Cal. Aug. 9, 2006) (citing *Kendrick v. Zanides*, 609 F. Supp. 1162, 1172 (N.D. Cal. 1985)).

**B.     Under the *Sleekcraft* Factors, Acrisure's Lanham Act Claims Against Newfront are Legally and Factually Baseless**

To establish trademark infringement, Acrisure **must** demonstrate that Newfront is using a mark confusingly similar to Acrisure's valid and protectable mark. *See Brookfield Comms., Inc. v. W. Coast Entm't Corp*., 174 F.3d 1036, 1046 (9th Cir. 1999). Courts in the Ninth Circuit consider the eight factors in *AMF Inc. v. Sleekcraft Boats* to analyze the likelihood of confusion in trademark infringement cases. *Id.*, 599 F.2d 341, 348-49 (9th Cir. 1979). The eight *Sleekcraft* factors considered when determining likelihood of confusion are: (i) the strength of the Plaintiff's mark; (ii) the similarity of the marks; (iii) the relatedness of the goods; (iv) evidence of actual confusion; (v) the marketing channels used; (vi) the type of goods and the degree of care likely to be exercised by the purchaser; (vii) Newfront's intent in selecting the mark; and (viii) the likelihood of expansion of the product lines. *Id.* The test is not intended to be applied like "counting beans," or as a checklist, but is used as a guide to determine the overall question of whether consumer confusion is likely. *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 786 F. App'x 662, 664 (9th Cir. 2019). This eight-factor test is "pliant," and the relative importance of each individual factor is case-specific. *Brookfield Comms., Inc.*, 174 F.3d at 1054. A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1106 (9th Cir. 2016). As set forth in detail below, while Acrisure and Newfront both provide insurance brokerage services, when considering the *Sleekcraft* factors as a whole—and specifically the weakness of Acrisure's mark, the dissimilarities between the Acrisure Design Mark and the Newfront Design Mark, as well as other variables—there is no basis, legally or factually, that a likelihood of consumer confusion will or has occurred. Ultimately, however, as both the Acrisure Design Mark and the Newfront Design Mark are used alongside their respective trade name/trademarks, no confusion is possible.

### (i)    *The Strength of Acrisure's Mark*

Primarily, Acrisure is unable to demonstrate a mark entitled to a strong scope of protection. Within the Ninth Circuit, "[t]he strength of a given mark rests on its distinctiveness. The scope of protection afforded a strong mark is greater than that afforded a weak one." *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1988), abrogation in part on other grounds recognized by *Eclipse Assoc., Ltd. v. Data General Corp.*, 894 F.2d 1114, 1116 n.1 (9th Cir. 1990). If the evidence establishes that the consuming public is exposed to third-party use of similar marks on similar goods, it "is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1373-74 (Fed. Cir. 2005). "In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd." *Miss World (UK) Ltd.*, 856 F.2d at 1449 (internal quotation marks and citation omitted). "Simply put, 'a mark which is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive.' It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other.'" *Id.*

As Acrisure is well aware, a number of third parties use and own federal registrations for the same or similar design marks in connection with services that are identical to that of Acrisure's, namely, insurance and insurance brokerage related services. *See* Federal Registrations, Cespedes Decl., Ex. A-3; *see also* ECF 1 at p. 3:26-27.  Given the coexistence of several other similar or identical third-party designs used for insurance related services, Acrisure's mark "is hemmed in on all sides by similar marks on similar goods" and "cannot be very distinctive." *Miss World (UK) Ltd.*, 856 F.2d at

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1449. Instead, "[i]t is merely one of a crowd of marks." *Id.* As a result, "customers will not likely be confused between any two of the crowd." *Id.* In fact, Moneta Group LLC's design (Reg. No.: 2,328,540) for similar insurance brokerage services has been used since 1986, well before Acrisure began use of its design mark for insurance brokerage services. *See* Federal Registrations at Monata Group LLC, Cespedes Decl., Ex. A-3. Therefore, consumers are not likely to confuse Newfront and Acrisure's design marks and are likely to look to other factors to identify and distinguish the source of services, such *as the trade name, word mark, or any additional elements used alongside the design* (such as the office's own name or trademark). Again, as noted throughout the Motion, as the Acrisure Design Mark and the Newfront Design Mark are used alongside their respective trade name/trademarks, consumers will not be confused, in any meaning of the word, by the Acrisure Design Mark and the Newfront Design Mark. Accordingly, this factor weighs against trademark infringement.

### (ii)   *The Similarity of the Marks*

The greater the similarity between two marks, the greater the likelihood of confusion. *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1206 (9th Cir. 2000). In determining whether two marks are similar, courts consider their sight, sound and meaning. *Id.* "In analyzing this factor, 'the marks must be considered in *their entirety and as they appear in the marketplace*.'" *Brookfield Comms., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) (emphasis added). Furthermore, according to the "anti-dissection" rule, "[t]he commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail.*" Estate of P. D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545-46, 40 S. Ct. 414, 64 L. Ed. 705, 1920 Dec. Comm'r Pat. 471 (1920); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:41(4th ed. 2004).

Here, the Acrisure Design Mark, as well as the Newfront Design Mark, is used "*in conjunction with and/or adjacent to the office's own name or trademarks*." ECF 1 at p. 4:8 (emphasis added); *see also* Newfront Design Mark, Cespedes Decl., Ex. A-1; Acrisure Design Mark, Cespedes Decl., Ex. A-2; Lotan Decl., Ex. C at ¶¶4-5. Any likelihood of confusion is therefore mitigated and this factor, similar to the previous factors, favors Newfront. *See Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293, 1298 (9th Cir. 1971) (likelihood of confusion mitigated where "the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

name of the company invariably accompanied the [trademarked] slogan").

### (iii) *The Relatedness of the Goods*

For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. *Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979). Here, while Newfront does provide insurance brokerage services, there is no realistic danger that the public will mistakenly assume that there is an association between Newfront and Acrisure based on an analysis of the remaining *Sleekcraft* factors discussed herein, including the sophistication of the consumer who is actually seeking insurance brokerage services. Thus, even if Newfront and Acrisure's services are related, in considering the totality of the relevant *Sleekcraft* factors (especially the use of the NEWFRONT name mark along with the Newfront Design Mark), consumer confusion is implausible. *See* Newfront Design Mark, Cespedes Decl., Ex. A-1; Lotan Decl., Ex. C at ¶¶4-5.

### (iv) *Evidence of Actual Confusion*

Acrisure has provided no evidence that the use of the Newfront Design Mark has led to any actual confusion. Without any such evidence, there is no persuasive proof that future confusion is likely. *Sleekcraft Boats*, 599 F.2d at 352. Further, as noted throughout the Motion, the Newfront Design Mark and the Acrisure Design Mark are used "***in conjunction with and/or adjacent to the office's own name or trademarks.***" ECF 1 at p. 4:8 (emphasis added); *see also* Acrisure Design Mark, Cespedes Decl., Ex. A-2; Newfront Design Mark, Cespedes Decl., Ex. A-1; Lotan Decl., Ex. C at ¶¶4-5. It is farfetched that a consumer would have any actual confusion between the two marks. As such, this factor, yet again, weighs in favor of Newfront.

### (v) *The Marketing Channels Used*

Convergent marketing channels increase the likelihood of confusion between marks. *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Therefore, courts examine the proximity of marketing channels and presence or absence of direct competition, with similarity in advertising as one factor in that examination. *Id.*; *see also Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir.) ("This factor takes into consideration where, how, and to whom the parties' products are sold . . ."), cert. denied, 449 U.S. 899 (1980). The services provided

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   by Acrisure and/or Newfront are not provided side-by-side in a commercial setting, but instead

2   provided via the respective offices for each of the entities. Acrisure alleges that it "consistently

3   deliver[s] high-quality services *through its offices*" and that Acrisure "provides a full suite of

4   insurance brokerage, risk management, and insurance-related services *through a network of*

5   *insurance offices*." ECF 1 at p. 3:26-27, 4:3 (emphasis added). The likelihood of confusion by a

6   consumer that is purchasing insurance *through the offices of the brokerage* is dubious at best.

7   Accordingly, this factor also weighs in favor of finding no trademark infringement.

8              **(vi)**    ***The Type of Goods and the Degree of Care Likely to be Exercised by the***

9                          ***Purchaser***

10          Here, as alleged by Acrisure, the parties provide "insurance brokerage, risk management, and

11  insurance-related services." ECF 1 at p. 3:26-27; *see also* ECF 1 at p. 5:18-19 ("Defendant is an

12  insurance brokerage incorporated in 2017 that provides a variety of insurance-related services

13  throughout the United States."). The Ninth Circuit has stated that the ordinary purchaser is assumed

14  to take more care in purchasing "expensive" items which he or she buys infrequently, than in buying

15  every day, relatively inexpensive items.  *See Sleekcraft*, 599 F.2d at 353. Moreover, "insurance is the

16  type of product that implicitly reflects a high degree of consumer care when making purchasing

17  decisions." *Northland Ins. Cos. v. Blaylock*, 115 F. Supp. 2d 1108, 1122 (D. Minn. 2000). As Acrisure

18  and Newfront are engaged in providing insurance-related services, which are the "type of product that

19  implicitly reflects a high degree of consumer care," this factor, similarly, weighs against trademark

20  infringement. *See id.* Likewise, as the Newfront Design Mark and the Acrisure Design Mark are used

21  "*in conjunction with and/or adjacent to the office's own name or trademarks*[,]" there is no

22  possibility that a purchaser will be confused by which company is providing the insurance related

23  services between Newfront and Acrisure. ECF 1 at p. 4:8 (emphasis added); *see also* Acrisure Design

24  Mark, Cespedes Decl., Ex. A-2; Newfront Design Mark, Cespedes Decl., Ex. A-1; Lotan Decl., Ex. C

25  at ¶¶4-5.

26             **(vii)**   ***Newfront's Intent in Selecting the Mark***

27          Knowing adoption of a mark closely similar to another's allows a court to presume that the

28  public will be deceived as the alleged infringer intended. *Sleekcraft*, 599 F.2d at 354. However, this

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

factor is of minimal importance. *GoTo.com*, 202 F.3d at 1208. The Ninth Circuit held that "this factor is only relevant to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark (or to the extent that a court wishes to consider it as an equitable consideration)." *Brookfield*, 174 F.3d at 1059. Here, as the marks are not similar (especially based upon the use of the name marks for both parties in conjunction with the design marks), the Court should not presume willful intent, and this factor likewise weighs against infringement. *Id.*

### (viii)   *The Likelihood of Expansion of the Product Lines*

"A strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. However, when the two companies already compete to a significant extent, this factor is of minimal importance. *See Brookfield*, 174 F.3d at 1060. Here, Acrisure alleges that Newfront "directly competes against Acrisure for customers[.]" ECF 1 at p. 6:17. As such, this factor is of minimal importance.

As shown above, not only do each of the *AMF Inc. v. Sleekcraft Boats* factors weigh heavily against the confusion necessary to establish a trademark infringement claim, these factors also establish that Acrisure's claims are meritless. Decisively, as Acrisure acknowledges, and as the attachments hereto evidence, the Acrisure Design Mark and the Newfront Design Mark are used in conjunction with both marks' trade dress (including the use of the design marks in conjunction with name marks). Confusion is not only improbable, but impossible. Even a cursory review by counsel for Acrisure would have established that Acrisure's claims are frivolous.

Instead, Acrisure is implementing its new strategy to thwart its employees from accepting employment with Newfront by filing these baseless and improper claims directly against Newfront. Therefore, based upon the above, Rule 11 sanctions should be imposed against Acrisure and its counsel.

## C.   Because Acrisure's Trademark Infringement Claim is Frivolous, Acrisure's Other Claims are also Frivolous

As shown above, Acrisure's trademark infringement claim under the Lanham Act is meritless. Because Acrisure's other claims also rely on the ability to prove trademark infringement, they fail as well. The Ninth Circuit, recognizes that "[w]hether we call the violation infringement, unfair

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

competition, or false designation or origin, the test is identical." *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979). Similarly, "state common law claims of unfair competition and actions pursuant to the California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (internal quotation marks omitted).

Each of Acrisure's claims rest on its assertion that the Newfront Design Mark is likely to cause confusion or deceive potential customers of Acrisure. *See* ECF 1; *see also New West Corp.*, 595 F.2d at 1178 ("The 'ultimate test' for unfair competition is exactly the same as for trademark infringement 'whether the public is likely to be deceived or confused by the similarity of the marks.'"). As the public will not be deceived or confused by any alleged similarity of the Acrisure Design Mark and the Newfront Design Mark, Acrisure's other claims fail as well for lacking any factual or legal basis.

## D.   Acrisure Failed to Conduct a Reasonable Inquiry and its Claims have been Brought in Bad Faith and for an Improper Purpose

The Court should sanction Acrisure and its counsel because they failed to make the reasonable inquiry all attorneys must undertake before signing a pleading under Rule 11. *See* FED. R. CIV. P. 11(c)(1) (providing that sanctions may be imposed on "any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation."). Notably, a reasonable inquiry requires a pleader to seek "sufficient credible information" regarding his or her claims or defenses rather than proceeding on mere suspicions, opinions, or conclusions. *See Kendrick*, 609 F. Supp. at 1172. The reasonable inquiry test "is meant to assist courts in discovery whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005). Acrisure, however, did not perform any such reasonable inquiry in this case.

As shown above, the Newfront Design Mark and the Acrisure Design Mark are used "*in conjunction with and/or adjacent to the office's own name or trademarks.*" ECF 1 at p. 4:8 (emphasis added); *see also* Acrisure Design Mark, Cespedes Decl., Ex. A-2; Newfront Design Mark, Cespedes Decl., Ex. A-1; Lotan Decl., Ex. C at ¶¶4-5. A reasonably inquiry, or any inquiry at all, would have demonstrated to counsel for Acrisure that the complaint is not well founded, as it is implausible that a

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

purchaser will be confused by which company is providing the insurance-related services between Newfront and Acrisure based upon the design marks which are used in conjunction with the associated names or trademarks. In addition, a simple review of federal registrations for the same or similar design marks,[4] as well as a simple evaluation of the Newfront Design Mark and the Acrisure Design Mark, would have shown that Acrisure's claims are also without a factual or legal basis.

Yet, instead of performing a reasonable inquiry, Acrisure brought this litigation for the improper purpose of retaliating against its competitor Newfront for hiring Acrisure's employees. *See Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) ("Federal Rule of Civil Procedure 11 provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is ***brought for an improper purpose***.") (emphasis added); *see also* Miller Decl. Exs. B-1-B-12. This action by Acrisure necessitates the imposition of sanctions, including the dismissal with prejudice of each of Acrisure's claims and the award of Newfront's attorneys' fees and costs in bringing this Motion as well as defending against these baseless claims.  *See e.g.*, *In re Dual-Deck Video Cassette Recorder Antitrust Lit.*, 11 F.3d 1460, 1466 (9th Cir. 1993) (trademark infringement claim was dismissed under Rule 12(b)(6) and held frivolous under Rule 11).

## IV.      CONCLUSION

Acrisure's claims are without merit, and the reasonable inquiry Rule 11 requires would have revealed the claims to be meritless before they were ever filed. Further, Acrisure has brought this meritless claim for improper and anti-competitive purposes. This abuse of the litigation process is exactly why Rule 11 exists. Newfront respectfully requests the Court sanction Acrisure and its counsel in any way it deems proper, including by dismissing with prejudice each of Acrisure's claims and by awarding Newfront the attorneys' fees and costs in bringing this Motion as well as defending against the baseless claims.

---

[4] Notably, Acrisure is deemed to have constructive notice of the federal registrations of the third parties using the same or similar designs in connection with related goods or services. *See* 15 U.S.C. § 1072.

1    DATED: March 24, 2020              REED SMITH LLP

2                                        By: /s/ Jesse L. Miller
3                                        Jesse L. Miller (SBN 183229)
                                         Donald A. Cespedes (SBN 321650)
4                                        Attorneys for Defendant

5                                        NEWFRONT INSURANCE, INC.

6

7                          **CERTIFICATE OF CONFERENCE**

8            I hereby certify that Counsel for Newfront put Acrisure on notice of its intention to file a Rule

9    11 Motion by letter dated February 28, 2020, which requested a voluntary withdrawal of the claims

10   asserted by Acrisure and included a copy of the Motion. Pursuant to Rule 11(c)(2) of the Federal Rules

11   of Civil Procedure, Newfront complied with the safe harbor provision by not filing the Motion with

12   the Court until 21 days after service of this Motion on Acrisure's counsel. As of the date of the filing

13   of this Motion, counsel for Acrisure has not agreed to withdraw its claims, causing Newfront to

14   conclude that an informal resolution is not possible.

15                                       /s/ Jesse L. Miller
16                                       Jesse L. Miller

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware